Frederick L. EBERLE and Norma
Eberle, Plaintiffs,

v.

Alan BAUMFALK, et al., Defendants.

No. 80 C 3868.

United States District Court,
N. D. Illinois, E. D.

Oct. 6, 1981.

Lance Haddix, Chicago, Ill., for plaintiffs.

James Schirott, Samelson, Knickerbocker, Schirott, Des Plaines, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Frederick and Norma Eberle ("Eberles") sue their neighbors Alan and Caren Baumfalk ("Baumfalks"), Baumfalks' attorney Marianne Yacobellis ("Yacobellis") and Du-Page County Sheriff's Policemen Thomas Stukey ("Stukey") and James Henderson ("Henderson"). Eberles' Complaint alleges in separate Counts:

I Alan Baumfalk verbally assaulted and abused Frederick Eberle with malice and intent to inflict emotional harm.

II Baumfalks and Yacobellis lied to the police to secure the false arrest of Frederick Eberle.

III Baumfalks, Stukey and Henderson conspired to arrest and detain Frederick Eberle falsely in violation of 42 U.S.C. § 1983 ("Section 1983").

IV Stukey and Henderson falsely arrested Frederick Eberle in violation of Section 1983.

V   All defendants' actions have caused Norma Eberle great mental and physical distress.

VI   Frederick Eberle was injured in violation of Section 1983 while being transported to jail after his arrest.

VII All defendants conspired in violation of Section 1983 to hide the identity and testimony of Sherry Hobbs, a witness to the events leading up to Frederick Eberle's arrest.

Stukey and Henderson have moved for summary judgment on Counts III, IV, V and VII. For the reasons stated in this memorandum opinion and order their motion is granted. On its own motion the Court also addresses the jurisdictional problem posed by Count VI.

### Count III

Count III asserts that Stukey and Henderson conspired with Baumfalks and Yacobellis to arrest Frederick Eberle without cause or justification. There is however no evidence to support that claim.[1]

■ For purposes of a Section 1983 action claiming false arrest the controlling question was put in *Brubaker v. King*, 505 F.2d 534, 536 (7th Cir. 1974):

The test, thus, under § 1983 is not whether the arrest was constitutional or unconstitutional or whether it was made with or without probable cause but whether the officer believed in good faith that the arrest was made with probable cause and whether that belief was reasonable.

Alan Baumfalk's deposition states he told the arresting officers that:

(1) Frederick Eberle made obscene gestures at him and shouted obscenities.

(2) Frederick Eberle took off his coat and threatened to harm Alan Baumfalk physically.

That evidence alone provided the arresting officers with a reasonable good faith belief that Frederick Eberle had committed an assault—and an assault is of course probable cause for an arrest.

Eberles have failed to submit *any* evidence countering (or even supporting an adverse inference as to) that showing of what information the officers acted upon. Fed.R.Civ.P. ("Rule") 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Accordingly summary judgment is appropriate in favor of Stukey and Henderson as to Count III.

### Count IV

Count IV simply alleges that Stukey and Henderson actually arrested Frederick Eberle pursuant to the scheme charged in Count III. Summary judgment is therefore appropriate for identical reasons.

### Count V

■ Count V charges that Norma Eberle has suffered great harm from (1) harassment by Baumfalks and (2) the unlawful arrest of her husband. Stukey and Henderson are implicated only in the second allega-

1. Henderson has stated both by affidavit and at his deposition that he did not participate in the arrest of Frederick Eberle. Defendants' counsel has stated that Deputy Russell Brandau accompanied Stukey on the day in question. Eberles nonetheless persist in seeking recovery from Henderson, citing discovery in other litigation in which defendants other than Stukey and Henderson stated that Henderson was the second officer participating in the arrest. Though it now appears that those identifications were mistaken, they do raise an issue of fact sufficient to preclude summary judgment on that basis. Henderson has therefore withdrawn his motion based on his non-presence (reserving however the right to seek attorney's fees from Eberles because of their claim). Because this opinion grants summary judgment for the arresting officers on different grounds, it would apply to any Complaint amendment seeking to add Brandau as a defendant unless Eberles could tender evidence demonstrating lack of probable cause.

tion. Because they had probable cause to arrest Frederick Eberle, any harm Norma Eberle suffered was not the result of an unlawful act on their part. Stukey and Henderson thus are also entitled to summary judgment on Count V.

### Count VII

Count VII states that Stukey and Henderson participated in a scheme to prevent Eberles from obtaining the statement of Sherry Hobbs. Both police defendants have unequivocally denied that allegation by affidavit. Again Eberles have failed to adduce any evidence in support of their allegations. Moreover, Frederick Eberle has stated in an affidavit in a related state court action that:

(1) He was aware of the Hobbs statement.

(2) He asked his attorney to obtain that statement on several occasions.

(3) He was denied effective assistance of counsel in that related state court action because, among other reasons, his attorney failed to secure the Hobbs statement.

There is no factual showing whatever that Stukey and Henderson individually or by conspiracy concealed evidence. They are therefore entitled to summary judgment as to Count VII.

### Count VI

Count VI alleges that Frederick Eberle was physically harmed en route to jail when Stukey *negligently* "stopped the squad car so suddenly that as a direct and proximate result, plaintiff suffered injuries to his left shoulder and right thumb." Defendants have not explicitly sought dismissal of Count VI. But that Count raises a difficult legal question that should be addressed: whether the negligent infliction of bodily injury states a cause of action under Section 1983.[2]

Last term the Supreme Court addressed the question whether the loss of *property* caused by the negligence of state officials stated a cause of action under Section 1983. In *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) the Court held that (1) a negligent act could constitute a deprivation of property for Fourteenth Amendment purposes but (2) a post-deprivation hearing in state court provided a sufficient remedy. Thus due process has been accorded if property was lost through state-imputed negligence but the state provided a post-deprivation remedy.

By its literal terms *Parratt* appears to apply with equal force to a Section 1983 claim for negligent infliction of bodily injury (101 S.Ct. at 1913):

Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

This opinion will therefore first pursue the analysis in those terms.

No issue exists as to the first part of the *Parratt* test if applied here: Stukey was unquestionably acting under color of state law. As for the second, *Parratt* held that a negligent act can be a deprivation of a property interest, the only due process question being whether a post-deprivation hearing was enough. Because a bodily injury implicates a liberty interest under the Fourteenth Amendment's Due Process Clause, *Collum v. Butler*, 421 F.2d 1257, 1259 (7th Cir. 1970), by parity of reasoning a negligent act may presumably be a deprivation of that liberty interest. There appears to be no principled distinction under *Parratt*

---

**2.** Stukey and Henderson argue in their motion that granting summary judgment on Counts III, IV, V and VII should cause this action to be transferred to the state court because of the absence of a federal question. That contention makes the question posed in this section of the opinion a critical one, though the proper disposition of this action is dismissal, not transfer (see n.6).

between negligent interference with a property as contrasted with a liberty interest.[3]

On that assumption it must next be determined whether, as with the loss of property, a hearing after a negligent deprivation of a liberty interest can satisfy the requirements of the Due Process Clause. On that score, it is relevant that *Parratt* (101 S.Ct. at 1916) adopted the analysis of Justice (then Judge) Stevens in *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978):

> It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers.

As in *Parratt* and *Bonner*, Frederick Eberle was allegedly subjected to the negligence of one police officer, not a state policy or intentional act. *Cf.* this Court's opinion in *Magayanes v. Terrance*, No. 80 C 1299 (N.D. Ill. Aug. 12, 1981) (plaintiff injured because police vehicle in which he was transported was entirely metal on the inside). Based on that reasoning a post-deprivation hearing would arguably be both necessary and sufficient to accord due process to Frederick Eberle.

Another portion of the *Parratt* opinion also indicates inferentially that situations involving bodily harm are susceptible to the same treatment. Justice Rehnquist stated (101 U.S. at 1916) that the Court's majority was applying an analysis consistent with *Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977), a case involving corporal punishment in schools. *Ingraham* pointed to "the common-law safeguards that already exist" as a basis for finding no due process violation despite that deprivation of liberty.[4]

If *Parratt* were thus extended to Stukey's alleged negligence causing Frederick Eberle's bodily injuries, the final question would be whether Illinois law permits a negligence action for those injuries. Stukey is a deputy sheriff employed by the DuPage County Sheriff. Stukey's liability is therefore controlled by the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Act"), Ill.Rev. Stat. ch. 85, §§ 1–101 ff. Section 2–202 of the Act provides:

> A public employee is not liable for his act or omission in the execution of any law unless such act or omission constitutes wilful or wanton negligence.

Because plaintiffs' Complaint alleges only a *negligent* act committed in the course of Stukey's employment, Stukey is immune from suit under Illinois law. Accordingly Illinois law does *not* provide a post-deprivation remedy such as the Supreme Court found in *Parratt*. If *Parratt*'s requirements applied with full vigor, Count VI would have to be preserved under Section 1983— though non-maintainable under state law.

That logic has to be flawed. It would make of Section 1983 a Procrustean bed to whose dimensions state tort law would have to be stretched or cut. See the pre-*Parratt* case, *Onley v. Simms*, 476 F.Supp. 974 (E.D. Pa.1979). No state could make the kind of policy judgment reflected in the Act. This Court can do no better than to quote the last substantive paragraph of Justice Rehnquist's opinion in *Parratt* (101 S.Ct. at 1917):

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which

---

3. It may be noted that Justices Blackmun and White concurred in *Parratt*, stating that they did not read the Court's opinion as applicable to deprivations of liberty. 101 U.S. at 1918. At least impliedly they would view deprivation of liberty as presenting an *a fortiori* case.

4. Only three other Justices joined entirely in Justice Rehnquist's *Parratt* opinion for the Court. It is not an easy task to parse that opinion and the several concurring opinions to determine what kind of majorities (different both in size and in composition) could be mustered for the "necessary" and "sufficient" conclusions suggested in the preceding paragraph of the text.

may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405]. We do not think that the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society.

For that reason this Court does not accept the literal extension of *Parratt* exemplified by the foregoing analysis. Unless and until controlling case law were to develop by mandating that result, this Court would have to find that the *Parratt* Court did not intend—because it did not consider—such consequences in the garden variety personal injury case.

Section 2–202 of the Act will therefore be applied in accordance with its terms. Count VI is dismissed under Illinois law because it makes no claim that Stukey was guilty of "willful or wanton negligence." [5]

### Conclusion

There is no genuine issue as to any material fact respecting any of Counts III, IV, V and VII, and defendants Stukey and Henderson are entitled to a judgment as a matter of law. Their motion for summary judgment on those Counts is granted. Count VI is dismissed under Section 2–202 of the Act. Because Counts I and II and the remaining claims under Counts III, IV,

V and VII have been in this Court only under pendent jurisdiction, and they are no longer sustained by federal claims, this action is dismissed in its entirety (without prejudice of course to the reassertion of those Counts and claims in a court of competent jurisdiction). [6]

[5]. If Eberles' Complaint were amended to include such an allegation, Illinois law *would* provide a post-deprivation remedy for the claimed injuries. In that event *Parratt* (which in that respect—the "sufficiency" condition referred to earlier—certainly applies to any negli-

gence claim) would require dismissal because due process was afforded by such a remedy.

[6]. Stukey and Henderson have suggested transfer of this action to the state court but advanced no authority for such an order.